# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1153


BRIDGETTE JOHNSON

VERSUS

WAL-MART STORES, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – Dist. 04
PARISH OF LAFAYETTE, NO. 08-023196
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Shannon J. Gremillion, Judges.


**AFFIRMED AS AMENDED.**

Michael B. Miller
Jacqueline B. Manekce
Attorneys at Law
P. O. Box 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
    Bridgette Johnson

Keith Joseph Landry
Allen & Gooch
P. O. Box 81129
Lafayette, LA 70598-1129
(337) 291-1420
COUNSEL FOR DEFENDANT/APPELLEE:
    Wal-Mart Stores, Inc.

**GREMILLION, Judge.**

Appellant, Bridgette Johnson, appeals the judgment rendered by the Workers' Compensation Judge (WCJ) awarding her temporary total disability benefits, penalties, and attorney fees, but denying her demand for additional penalties and attorney fees for failure to pay indemnity benefits of $20.86 for the first day she was eligible to receive them, and for denying her request for a CT scan procedure. For the reasons that follow, we affirm as amended and render judgment awarding Johnson additional attorney fees.

## FACTS

On September 27, 2008, Johnson, an employee at a Wal-Mart distribution center, was lifting a box when she felt a "pop" in her low back. She reported this to her supervisor and was seen that day at Doctors' Hospital of Opelousas for complaints of low-back pain. The emergency room physician, Dr. Thomas Wilson, prescribed ibuprofen and Skelaxin and instructed Johnson to do no lifting of more than ten pounds for five days. Johnson was discharged from the hospital that day.

Johnson's primary care physician was Dr. John Tassin of Ville Platte, Louisiana. She saw Dr. Tassin on October 1, 2008, for complaints of headaches and neck, low-back, and hip pain. Dr. Tassin prescribed somewhat stronger medication than did Dr. Wilson and instructed Johnson not to return to work. A notation on this order dated Johnson's no-work status to September 29. Johnson returned to Dr. Tassin on October 3, 2008, with similar complaints. Dr. Tassin referred Johnson to Dr. Louis Blanda, a Lafayette, Louisiana, orthopaedic surgeon.

Dr. Blanda saw Johnson on October 9, 2008. She complained of aching neck pain and stabbing low back pain. Dr. Blanda prescribed physical therapy and Lortab for pain. Johnson again saw Dr. Blanda on October 30. Her pain had increased. Dr. Blanda discontinued Johnson's physical therapy, ordered light

activities and home exercises, a TENS unit, and cervical and lumbar MRI scans, which were scheduled for November 21, 2008. The MRI showed a small central annual protrusion at the C6-7 level and edema at the T12 level. Johnson had no disk herniation. She returned to Dr. Blanda on December 9, at which time he reviewed the MRI and recommended oral steroids and Tylox. On January 22, 2009, Johnson informed Bland that she did not take the full course of oral steroids because she thought it made her heart race. Her lower back complaints were significantly worse than her neck, and was radiating into both legs as low as the thighs. Dr. Blanda recommended that Johnson receive an epidural steroid injection. The injection was scheduled for February 26; however, Johnson found out she was pregnant in February and the injection was cancelled on Dr. Blanda's order. She also was told to discontinue her medications.

In March 2009, Johnson's pain was worse. She was to check with her obstetrician to see what medications she was allowed to take. Dr. Blanda prescribed a maternity corset for Johnson to wear. In June, Johnson called Dr. Blanda's office with increased complaints in her back, neck, and hips. Dr. Blanda's physician's assistant, Steve Scott, advised that she could have massage therapy, but was to check with her obstetrician about medications. In July, Dr. Blanda saw Johnson again and again was told that her pain was worse, but that her obstetrician told her that massage therapy was not an option because he would not want her having any "rub-down gels." She was limited to taking Tylenol. By December, Johnson had delivered her child and again sought to have the epidural steroid injection. Dr. Blanda placed Johnson back on Lortab, scheduled the injection procedure, and told Johnson to return in three months.

Dr. Blanda next saw Johnson in March 2010. Her complaints at that time continued to be of pain in her low back and neck. Dr. Blanda recommended and

scheduled a CT scan of Johnson's low back and pelvis. Wal-Mart approved the scan of the low back but not of the pelvis. The lumbar CT scan demonstrated a herniated disk at the L4-5 level. Johnson returned to Dr. Blanda in April 2010 with continued back pain and pain in her right leg. Based on the CT scan, Dr. Blanda recommended that Johnson undergo a microdiskectomy at the L4-5 level.

By the time Johnson next saw Dr. Blanda, June 10, 2010, her surgery had still not been approved. She had the same complaints of pain and demonstrated neurological deficits in her lower extremities, particularly on the right side. Wal-Mart's claims administrator, Claims Management, Inc., authorized the surgery four days later. Although the record is not clear, it appears Johnson had not had the lumbar surgery as of the trial in June 2010.

The WCJ rendered oral reasons for judgment in March 2011. Pertinent to the issues presented on appeal, the WCJ found that Johnson was not entitled to a presumption of a 40-hour work week when calculating her average weekly wage as her responsibilities as a single mother regularly required that she work less than full-time. The WCJ also found that Wal-Mart should be penalized $2,000.00 for failing to timely pay the emergency room bill of September 27, 2008, $400.00 for failing to pay Johnson's weekly indemnity for the pay period beginning on September 29, 2008, the so-called "waiting week," and $100.00 for untimely payment of the first payment of weekly indemnity. The WCJ's ruling was silent on an award to Johnson a penalty for Wal-Mart's failure to pay indemnity for October 6, 2008, which Johnson claimed was the first day she was owed indemnity beyond the waiting week.

The WCJ also refused to assess a penalty for failure to authorize the pelvic CT scan. The WCJ's reasoning was as follows:

I do not assess a penalty for the failure to immediately or ever approve the pelvic CT. It was requested after childbirth. As I mentioned earlier Ms. Johnson had, had a child during the course of her medical treatment. And the pelvic CT was recommended after she had her childbirth. She had no problems with the pelvis before she had the child. This was the first mention of any pelvic problems. Dr. Blanda does mention and consistently state a pelvic CT as opposed to a hip CT. There is no statement of causal relation to a pelvis problem by Dr. Blanda, and Dr. Blanda does not re-urge performance of the pelvic CT because the lumbar CT was immediately approved and performed. A herniated disc was found and surgery recommended.

In his April 13, 2010 report, Dr. Blanda mentions that the pelvic CT was not authorized. He does not, in his recommendations, again recommend the pelvic CT that he had recommended the month before.

Under these facts, I do find that the claim for the approval or necessity of the pelvic CT was reasonably controverted.

The WCJ did not address in her oral reasons the issue of legal interest on amounts awarded. Johnson's counsel was to prepare the judgment for the WCJ to sign. That judgment did not award legal interest on any sums, and no such language was inserted into the judgment for an award of interest.

## ASSIGNMENTS OF ERROR

Johnson assigns the following errors:

1. The worker's [sic] compensation judge erred in not awarding Ms. Johnson a $2,000.00 penalty for Wal-Mart Stores, Inc.'s failure to pay indemnity benefits for October 6, 2008.

2. The worker's [sic] compensation judge erred in finding that the CT scan of the pelvis recommended by Dr. Blanda on March 16, 2010 was not causally related to Ms. Johnson's accident and/or injuries and in not awarding a $2,000.00 penalty for Wal-Mart Stores, Inc.'s failure to reasonably controvert the need for the testing.

3. The worker's [sic] compensation judge erred in not awarding legal interest and expenses.

## ANALYSIS

An employer's obligation to pay weekly indemnity benefits to a disabled worker is governed by La.R.S. 23:1221, *et seq.* Louisiana Revised Statute 23:1224

4

provides, "No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed." This first week is known colloquially as the "waiting week." In the context of Johnson's claim, when the waiting week began was an issue because while Johnson visited the emergency room on September 27, 2008, she was not told by Dr. Tassin that she was not to work until October 1. Her weekly indemnity benefits were not paid by Wal-Mart to not begin until October 7. The WCJ found that the waiting week started on October 6 and Wal-Mart had under paid Johnson by a day. She awarded Johnson a $400.00 penalty. Johnson contends that the penalty should be $2,000.00.

Louisiana Revised Statute 23:1201(F) provides that failure to pay compensation "shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation. . .or fifty dollars per calendar day." However, the imposition of penalties falls within the WCJ's discretion. *Mouton v. Gulfstream Services*, 08-1186 (La.App. 3 Cir. 5/6/09), 11 So.3d 1135. Further, penalties should only be imposed when "the facts clearly negate good faith and just cause in refusing to pay." *Id.* At 1137 (quoting *Young v. Christus Schumpert Med. Ctr.*, 39,593, p. 10 (La.App. 2 Cir. 9/29/04), 873 So.2d 923, 933-34). Here, penalties were awarded and the issue is the amount of the penalty.

We note that the statutory language seems to mandate the imposition of penalties. However, the statute states that the amount awarded is "up to" twelve percent or $50.00 per day. La.R.S. 23:1201(F). We find no abuse of the WCJ's discretion.

5

Johnson also complains that the WCJ found that the CT scan of the pelvis recommended by Dr. Blanda was not causally related to her accident and failed to award her a penalty for Wal-Mart's failure to authorize the test. She points out that the medical records contain references to pain in the "hips." This evidence, Johnson argues, entitles her to a presumption that the need for the pelvic CT scan is causally related to the accident. *See Richard v. Vermillion Hosp.*, 10-385 (La.App. 3 Cir. 6/9/10), 41 So.3d 1219, *writ denied*, 10-1611 (La. 10/8/10), 46 So.3d 1269.[1] Accordingly, she contends the CT scan is reasonable and medically necessary treatment the law requires Wal-Mart to provide. *See* La.R.S. 23:1203.

Wal-Mart contends that Johnson is not entitled to a presumption that the CT scan is causally related to the accident. It properly points out that before the presumption attaches, the medical evidence must show that there is a reasonable possibility of a causal connection to the accident. *Richard*, 41 So.3d 1219. The plaintiff must also show that before the accident she was in good health, but afterward she exhibited a disabling condition that continuously manifested itself thereafter. *Id.* Proving these facts is a burden borne by the plaintiff. *Id.*

The WCJ was not impressed by Johnson's attempt to carry her burden of proof. Of particular note to the WCJ was the fact that the CT scan was not recommended by Dr. Blanda until after the birth of Johnson's child. The WCJ distinguished between "hip" and "pelvis" in terms of complaints. Further, Dr. Blanda's records do not tie the CT scan to the accident, and after the CT scan of the lumbar area was approved, those records do not reiterate the need for the pelvic CT scan. These factors convinced the WCJ that Johnson had failed to carry her burden of proof.

---

[1] Johnson must rely on the presumption because the medical records do not associate the need for the pelvic scan with her on-the-job accident, and Johnson presented no medical testimony establishing a causal connection.

The factual findings of the WCJ are reviewed under the manifest error standard. *Id.* Under that standard, the reviewing court must determine that there is no reasonable basis in the record to support the WCJ's findings. *Id.*; *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the WCJ's findings cannot be manifestly erroneous. *Id.* Further, the reviewing court may not simply skim the record to find evidence that contradicts or supports the WCJ's findings, but must instead review the record in its entirety. *Id.*

We find that the record reasonably supports the WCJ's factual findings regarding the pelvic or hip issues, regardless of whether one deems those terms synonymous. Johnson failed in two of the requirements for carrying her burden of proof: the record does not establish the required element that Johnson prove that she was in good health before the accident, and, as pertinent, she failed to establish that the hip or pelvis condition was continuously manifested after the accident. Dr. Blanda's records do not contain any reference to hip or pelvis complaints between October 8, 2008, and her discovery of her pregnancy in February 2009.

Johnson also appeals the failure of the WCJ to award pre-judgment legal interest. As earlier noted, Johnson's counsel prepared the judgment, which omitted any reference to legal interest. Nevertheless, La.R.S. 23:1201.3 provides that compensation awarded and all payments thereof ordered by the WCJ shall bear judicial interest from the date it was due until paid. We have long ruled that the interest provided for in Section 1201.3 is mandatory. *See Crooks v. Town of Ball*, 94-466 (La.App. 3 Cir. 11/2/94), 649 So.2d 597.

But Johnson does not stop there: because she prayed for penalties and attorney fees, she claims she is entitled to pre-judgment legal interest on those awards as well. Penalties and attorney fees are not "compensation" within the

7

purview of La.R.S. 23:1201.3. *Sharbono v. Steve Lang & Son Loggers*, 97-0110 (La. 7/1/97), 696 So.2d 1382. As the Louisiana Supreme Court recognized in *Smith v. Quarles Drilling Co.*, 04-0179, pp. 6-7 (La. 10/29/04), 885 So.2d 562, 566-67 (footnote omitted)(alteration in original):

> The judgments rendered by the workers' compensation judge and the court of appeal in this matter are devoid of an award of interest accruing on the attorney fee award. It has long been the rule that interest cannot be recovered on a judgment which is silent as to interest. *Factors' & Traders' Ins. Co. v. New Harbor Prot. Co.*, 39 La.Ann. 583, 2 So. 407 (La.1887); *Succession of Anderson*, 33 La.Ann. 581 (La.1881). An exception exists when interest is provided by statute. We agree that "legal [or judicial] interest is statutory and should be strictly construed." *Cole v. Celotex Corporation*, 599 So.2d 1058, 1081 (La.1992), *quoting Cole v. Celotex Corporation,* 588 So.2d 376, 389 (La.App. 3rd Cir.1991), which in turn cites *Merchant v. Montgomery Ward & Co.*, 83 So.2d 920, 926 (La.App. 1st Cir.1955), a case in which then Judge Tate writing for the court states, "[Judicial] interest is somewhat in the nature of a penalty, and as applied to the present facts the statute should be strictly construed."

Interest on penalties and attorney fees are not mandated by statute; thus, the judgment's silence amounts to a denial of interest on those sums. Johnson is entitled to prejudgment judicial interest only on the "waiting week" indemnity that was not paid. She is, however, entitled to post-judgment legal interest on all sums awarded, to be calculated from the date those sums were awarded. *Sharbono*, 696 So.2d 1382.

Johnson also appeals the WCJ's failure to award expenses in the amount of $470.56. These expenses represent telephone charges, postage, mileage, photocopies, and the copying fees assessed by Drs. Blanda and Steven Staires and Doctors' Hospital for Johnson's medical records. Awards of court costs at the trial level are governed by La.Code Civ.P. art. 1920. The article provides that when the judgment is silent on the issue, costs "shall be paid by the party cast, and may be taxed by a rule to show cause." No such rule was filed in this case. We are empowered and mandated to "render any judgment which is just, legal, and proper

8

upon the record on appeal." La.Code Civ.P. art. 2164. The evidence regarding the costs Johnson is seeking consists of her counsel's affidavit, which itemizes those costs. Based on the record, we find it proper to render judgment on the cost issue and amend the judgment to tax Wal-Mart with costs of court in the amount of $470.56.

Lastly, Johnson seeks additional attorney fees for her counsel's work on appeal. The award of additional attorney fees on appeal is generally premised upon the employee successfully defending the WCJ's judgment on appeal. *See Bourgeois v. Brown's Deli & Market, Inc.*, 09-290 (La.App. 3 Cir. 10/14/09), 21 So.3d 1072; *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313; *LeMelle v. Wal-Mart Stores, Inc.*, 04-527 (La.App. 3 Cir. 9/29/04), 883 So.2d 526. In *LeMelle*, we awarded a claimant additional fees for appeal when both parties appealed and the employee was only successful in defending the judgment against the employer's appeal. We are not aware of any instance in which additional fees were awarded a claimant who was the only appellant and who was largely unsuccessful in obtaining relief; indeed, that would only encourage appeals of dubious merit. We decline to award any additional attorney fees for work on appeal.

**CONCLUSION**

The award of a penalty of $400.00 for Wal-Mart's failure to pay Johnson's "waiting week" did not constitute an abuse of the WCJ's discretion. A penalty of $2,000.00 is allowed by statute, but is not mandated.

The WCJ was not manifestly erroneous in finding that Johnson failed to carry her burden of proof that the pelvic CT scan was causally related to her on-the-job accident. The condition was not continuously manifested from the date of the accident, and Johnson failed to establish that she was in good health before the

9

accident. She was not entitled to a presumption of causation, and no medical evidence was introduced to establish a causal relationship.

Johnson is not entitled to pre-judgment judicial interest on her demands for penalties and attorney fees. These items are not "compensation" for purposes of the award of interest as a matter of law. She is, however, entitled to pre-judgment judicial interest as a matter of law on the indemnity owed. She is further entitled to post-judgment interest on the penalties and attorney fees awarded.

We amend the judgment to award costs of court to Johnson of $470.56.

Lastly, because we have not awarded additional attorney fees to an appellant who has not succeeded in obtaining relief on appeal, we decline to award any additional attorney fees in this matter.

Costs of this appeal are taxed to appellant, Bridgette Johnson.

**AFFIRMED AS AMENDED.**