KYZAR, J., concurs in part, dissents in part, and assigns reasons hi disagree with the majority in -affirming of the decision of the Workers Compensation Judge (‘WCJ”) finding that Ms. Hataway did not prove entitlement to ben-, efits or a compensable: mental injury caused by a physical injury, and thus find that the WCJ erred in dismissing the workers’ compensation claim as a whole. The evidence established that Ms. Hata-way was injured when the deportee kneed her in the back while attempting to jump over her during the event that occurred on the transport plane, whether the event is referred to as a “riot” or otherwise.. The testimony of Mr. Pippin, another Akal guard on the same flight, corroborated Ms. Hataway’s testimony as to the event. It is undisputed that the event did occur. When Ms. Hataway arrived back at home base after the flight, Mr. Pittman testified that he picked her up and that she looked as if she had been crying and was hurting, evidence of a physical injury and certainly a traumatic one. She was seen that night at St. Francis Cabrini Hospital where she was observed to have, and was diagnosed with, a contusion on her back. Indeed, there was no real dispute that Ms. Hata-way was injured physically, in that .the defendant was not contesting her entitlement to benefits going forward at the trial, as evidenced by ^counsel’s objection to the testimony of Mr.,Pittman, stating, “This,is a penalties and attorney’s fees claim, not entitlement to benefits, benefits going forward.” This statement, in my view, clearly establishes that the parties indeed were stipulating to her entitlement to.benefits, though defendant did not wish to characterize the event that occurred on the plane to be a “riot,” which would seem to have greater legal and corporate implications for the company beyond the realm of a workers’ compensation claim. Accordingly, the WCJ erred in terminating current benefits and dismissing the claim as a whole given the clear stipulation of the defendant that benefits were not the issue before the WCJ. As to the payment for treatment for mental injury, the extent of the physical injury, suffered by Ms. Hataway in the event occurring on the plane, including its severity or its duration, is not controlling. Traweek v. City of West Monroe, 30,571, p. 8 (La.App. 2 Cir. 5/13/98), 713 So.2d 655, 661, writ denied, 98-1936 (La. 11/6/98), 727 So.2d 449. The question becomes whether there was clear and convincing evidence that the mental injuries resulted from the event and the physical injury she suffered therefrom. As the court in Tmweek notes, “[tlhe critical inquiry is whether the conclusive psychiatric testimony can link this physical trauma as the cause of the mental illness of the employee.” Id. There was such a link presented, here. S. -Hugh Bryan, Ph.D., Ms. Hataway’s treating psychologist, diagnosed her with conversion disorder, severe posttraumatic stress disorder, and pain disorder associated with a general medical condition and psychological factors. He defined conversion disorder as “a mental condition in which a person exhibits physical symptoms that do not correlate to physical conditions.” However, he opined that both the conversion disorder and the posttraumatic stress disorder were caused by “the traumatic event, work accident.” Certainly this “traumatic event, work accident” as referred to by the psychologist |3included the physical injuries she suffered as a result of the incident, however sever or slight they might have been. Dr. Bryan further testified that.he thought at some point Ms. Hataway had “something organic, some physiological medical condition and also something psychological” going on, a clear indication that the mental condition was indeed related to the physical condition and vice versa. He did use the term “physical dysfunction” when referencing Ms, Hataway’s physical issues, and although he did not specifically testify that she was physically injured during the event on the fight, there is no doubt but that she received at least some injury as was diagnosed at St. Francis Cabrini at.the conclusion of the flight. Prior to the incident on the plane, Ms, Hataway was experiencing no physical impairments but suffered from diagnosed back and shoulder pain extensively thereafter, Even assuming that her shoulder condition described as frozen shoulder syndrome and bulging discs in her low back were degenerative in nature, she was asymptomatic prior to the incident. A claimant who suffers from a pre-exist-ing medical condition is also entitled to benefits if the- accident aggravated, accelerated or combined with the pre-ex-isting condition to produce disability. Atwell [ v. First General Services], 06-0392 at 4 [ (La.App. 1 Cir. 12/28/06) ], 95 1 So.2d [348] at 352. An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. Stelly v. Guy Scroggins, Inc., 96-401, pp. 7-8 (La.App. 3d Cir. 10/9/96), 682 So.2d 782, 786, writ denied. 96-3060 (La, 2/7/97), 688 So.2d 503. Sevin v. Chevrolet, 08-1362 (La.App. 1 Cir. 4/30/09, 9-10), 24 So.3d 879, 885-86, Accordingly, I would reverse the judgment of the WCJ terminating benefits and dismissing her workers compensation claim: Though I conclude Ms. Hataway is indeed entitled to benefits for her physical and mental injuries, and thus her entitlement to payment of mileage expenses and medical bills for the treatment of the same, I would affirm the WCJ’s decision as to penalties and attorney fees based on the WCJ’s conclusion that there was a reasonable basis for the defendants to bring the matter to litigation recognizing the great discretion of the WCJ in 14deciding whether to allow or to disallow such. Mouton v. Gulfstream Servs., 2008-1186 (La.App. 3 Cir. 5/6/09), 11 So.3d 1135, 1137. In all other respects, I concur with the majority.