STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-385

KERMIT RICHARD

VERSUS

VERMILION HOSPITAL AND LOUISIANA
COMMERCE AND TRADE ASSOCIATION
SELF-INSURERS' FUND

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 05-01754
SAMUEL LOWERY, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Oswald A. Decuir, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED AND RENDERED.

John J. Rabalais

**Janice B. Unland**
**Heather W. Blackburn**
**Rabalais, Unland & Lorio**
**200 Caroline Court**
**Covington, Louisiana 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> **Vermilion Hospital and Louisiana Commerce and**
> **Trade Association Self-Insurers' Fund**

**Janice H. Barber**
**Jennifer K. Barber**
**The Barber Law Firm**
**Post Office Box 1909**
**Sulphur, Louisiana 70664**
**(337) 527-4633**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
> **Kermit Richard**

**GENOVESE, Judge.**

In this workers' compensation case, Defendants, Vermilion Hospital and Louisiana Commerce and Trade Association Self Insurers' Fund (collectively "Employer"), appeal the judgment of the Office of Workers' Compensation finding that Plaintiff, Kermit Richard, currently suffers cognitive deficiencies resulting from his work-related accident and that twenty-four-hour care is reasonable and medically necessary. Mr. Richard answered the appeal seeking additional attorney fees for work necessitated by the Employer's appeal. For the following reasons, we affirm and render.

## FACTS

It is undisputed that Mr. Richard fell at work on March 18, 2003, and that the fall resulted in a traumatic brain injury (TBI). The Employer paid workers'

compensation benefits in connection with this injury. By 2009, Mr. Richard's medical condition had deteriorated to the degree that Dr. Glenn Ally recommended that twenty-four-hour care be provided to Mr. Richard in his home. Mr. Richard contended that his medical condition was causally related to his work-related accident and, therefore, was compensable. To the contrary, the Employer maintained that Mr. Richard's current disability was not causally related. Mr. Richard filed a Disputed Claim for Compensation on March 8, 2005, wherein he contended that he was entitled to the recommended medical treatment as well as certain mileage reimbursements.

When the matter proceeded to trial on August 26, 2009, the parties entered into the following stipulations:

(1)     Mr. Richard was an employee of Vermilion Hospital on March 18, 2003, when he suffered a work accident on that date while in the course and scope of his employment when he fell from a dumpster.

(2)     Vermilion Hospital's workers' compensation liability insurer was Louisiana Commerce and Trade Association Self-Insurers' Fund pursuant to a policy of insurance which was in full force and effect at the time of the subject accident.

(3)     Mr. Richard's average weekly wage at the time of the accident was $538.64, with a corresponding weekly compensation rate of $359.11.

(4)     Mr. Richard's choice of physicians included Dr. Fabian Lugo, Dr. Paul Toce, Dr. Norman Anseman, and Dr. Glenn Ally.

(5) No attorney fees were due in connection with Mr. Richard's treatment with, or recommended by, Dr. Barrett Aldridge as same was timely authorized by the Employer.

(6) No penalties or attorney fees were due in connection with mileage reimbursements, indemnity benefits, nor prescription medications, all of which were timely and accurately paid.

Given these stipulations, the issues to be decided by the workers' compensation judge (WCJ) included whether Mr. Richard's current mental condition was causally related to the March 2003 accident, whether his work-related accident aggravated or accelerated a pre-existing mental condition, the nature and extent of Mr. Richard's disability, and whether he was entitled to past and future medical treatment. Additionally, the WCJ had to determine whether the Employer was entitled to any credit or offset.

Following a trial on the merits, the WCJ rendered judgment, finding that Mr. Richard's "cognitive deficiencies are causally related to his March 18, 2003[] work place accident." Additionally, "[Mr.] Richard is entitled to a presumption of causation that his current cognitive deficiencies are causally related to his March 18, 2003 accident; as the medical evidence from all of the treating physicians, reviewed as a whole, does not rise to the level necessary to rebut the causation presumption." The WCJ ruled that "Mr. Richard's treating physician's recommendation for twenty-

3

four[-]hour care in his home is medically reasonable and necessary[.]" Finding that the Employer "reasonably controverted the claim herein[,]" the WCJ denied "all claims for penalties and attorney fees[.]" It is from this judgment that the Employer appealed. Mr. Richard answered the appeal, seeking attorney fees for the work on appeal.

**ASSIGNMENTS OF ERROR**

The Employer presents the following assignments of error:

1. The trial court erred in holding that [Mr. Richard's] medical condition, i.e., Alzheimer's Disease, was caused or hastened to onset by the March 18, 2003 work accident[.]

2. The trial court erred in holding that 24-hour care in [Mr. Richard's] home is reasonable and medically necessary as a result of the March 18, 2003 work accident[.]

3. The trial court erred in allowing Plaintiff's Exhibit 9, the records, articles and other documents provided by Dr. Glenn Ally, into evidence, over [the Employer's] objection[.]

4. The trial court erred in allowing into evidence Plaintiff's Exhibit 11, the testimony of Dr. Glenn Ally regarding the articles he reviewed, over [the Employer's] objection[.]

In his answer to appeal, Mr. Richard seeks an award of additional attorney fees for the work necessitated by the Employer's appeal.

**LAW AND DISCUSSION**

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d

129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Landry v. Furniture Ctr.*, 05-643, pp. 5-6 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 309, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d 290.

## CAUSATION

As phrased by the WCJ, "[t]he dispute centers around Mr. Richard's contention that the traumatic brain [injury] he suffered while working at the Vermilion Hospital on March the 18th, 2003, has disabled him to the point where he needs around-the-clock professional care in his home." To the contrary, the Employer asserts that Mr. Richard's current disability is a result of the natural progression of Alzheimer's Disease. On this issue, the Employer asserts on appeal that the WCJ erred in concluding that "[Mr.] Richard's cognitive deficiencies are causally related to his March 18, 2003, work place accident[.]"

**Entitlement to Legal Presumption**

Relative to the issue of causation, the WCJ found that Mr. Richard was entitled

5

to a legal presumption on causation. This court has explained a claimant's burden of proof and the application of this legal presumption as follows:

> "An employee in a worker[s'] compensation action has the burden of establishing a causal link between the work-related accident and the subsequent disabling condition." *Miller v. Roger Miller Sand, Inc.*, 94-1151, p. 6 (La.11/30/94), 646 So.2d 330, 334. An employee's disability is presumed to have resulted from the accident if before the accident, the injured employee was in good health, but commencing with the accident, symptoms of the disabling condition appeared and continuously manifested themselves afterwards. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). However, the presumption requires either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. *Id*.
>
> *Marks v. 84 Lumber Co.*, 06-358, pp. 3-4 (La.App. 3 Cir. 9/27/06), 939 So.2d 723, 727.

*Parrish v. Van-Tel Commc'ns*, 07-454, p. 3 (La.App. 3 Cir. 10/10/07), 967 So.2d 592, 595.

The Employer asserts on appeal that Mr. Richard "failed to establish [his] entitlement to [the] presumption of causation of any of his current symptoms or complaints to the subject work accident." In support of this contention, the Employer argues that Mr. Richard's cognitive deficiencies predated his work accident. To the contrary, the WCJ found from the evidence that Mr. Richard was in "good health" prior to the subject accident.

At trial, the Employer elicited testimony in an effort to show that Mr. Richard

6

manifested symptoms prior to his work-related accident. Patricia Hebert, Mr. Richard's work supervisor of many years, testified that in the year preceding Mr. Richard's accident, he had become increasingly forgetful. It was her testimony that she had to remind him of certain job duties and necessary paperwork. However, she testified that Mr. Richard was a good employee and that she never issued a reprimand to him as a result of his work performance. In fact, Ms. Hebert testified that even though Mr. Richard needed to be reminded, his forgetfulness did not affect his work.

In his oral reasons, the WCJ noted that Mr. Richard "had consistently earned positive job performance appraisals" and, although he "seemed to be forgetful[,]" it was "not to the point of causing a problem with his employment." Additionally, the WCJ expressly stated that "before the 2003 accident, Mr. Richard met any reasonable definition of . . . good health. Before his brain trauma, he was a very competitive long-distance runner who, by all accounts, was an independent[-]functioning employee of the hospital and had been so for about 20 years." We do not find the WCJ's determination that Mr. Richard was in "good health" prior to his work-related accident to be manifestly erroneous.

The Employer also asserts on appeal that Mr. Richard failed to establish that his disabling condition commenced with his work-related accident and continuously manifested itself afterwards. However, the medical evidence does not support this contention.

7

On the date of his accident, Mr. Richard was transported by ambulance to Our Lady of Lourdes Hospital (Lourdes) where he remained for nine days. Both Dr. Anseman and Dr. Thomas Bertucinni diagnosed him with a TBI. Mr. Richard then began a fourteen-day inpatient rehabilitation at Lourdes. This treatment was followed by continuing orders for rehabilitation and continuing treatment with Dr. Anseman, Dr. Bertucinni, Dr. Ally, Dr. Lugo, and Dr. Toce. Dr. Anseman's progress notes of June 2003 document that Mr. Richard reported problems with his memory, particularly "an increasing difficulty in his short term memory." Also in June 2003, Dr. Lugo diagnosed "post-concussion syndrome with subjective memory difficulties."

As Mr. Richard asserts in his brief to this court, he continued to treat with Dr. Lugo as well as several other physicians. At the time of trial, he was still seeing both Dr. Lugo and Dr. Ally. Moreover, Mr. Richard notes that "[n]o evidence was presented that indicated a break or gap in treatment." He contends that this "continuity of medical treatment" was referenced by the WCJ who, in his oral reasons for judgment, specifically stated as follows:

> The facts, unadorned and unexplained, show clearly that Mr. Richard's decline into the rather pitiful position he now finds himself in began with his brain injury or, as his neurologist Dr. Fabian Lugo described some three months after the incident, quote, post-concussion syndrome with subjective memory difficulties, end of quote.
>
> Dr. Lugo was quite specific when he attributed the symptoms as, quote, most likely the result of traumatic cortical axonal brain damage, end of quote.

8

The pronounced short-term memory loss which reached the point where Mr. Richard is no longer able to drive, or even run unescorted, can be traced to this fall. He certainly had not been prescribed Exelon, a drug to enhance memory function[,] before the accident.

We find the evidence of record supports the conclusion of the WCJ that Mr. Richard's disabling condition commenced with his March 2003 work-related accident and that his extensive medical treatment demonstrates that it continuously manifested itself thereafter.

Finally, in order for Mr. Richard to be aided in his burden of proof by the legal presumption relative to causation, the medical evidence must also show "a reasonable possibility of causal connection between the accident and disabling condition." *Parrish*, 967 So.2d at 595 (quoting *Marks*, 939 So.2d at 272 (citing *Walton*, 475 So.2d 320)). After a thorough review of the record, particularly the medical expert opinions in this case, it is clear that there is sufficient medical evidence to establish a reasonable possibility of causal connection between Mr. Richard's current disability and his work-related accident. Therefore, the WCJ did not err in applying the legal presumption of causation when considering the facts of this case.

**Proof of Causation**

Herein, the workers' compensation judge was faced with a common problem in workers' compensation cases, conflicting medical opinions. When the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. The workers' compensation judge is granted considerable discretion in evaluating expert testimony, and his decision to accept the testimony of one expert over the conflicting testimony of another expert

9

can never be manifestly erroneous. *Fontenette v. McDermott, Inc.*, 95-0190 (La.App. 1 Cir. 10/6/95); 694 So.2d 266. *See also Rosell v. ESCO,* 549 So.2d 840 (La.1989).

*Connolly v. Seeley Serv. Constr.*, 97-1620, pp. 6-7 (La.App. 1 Cir. 5/15/98), 712 So.2d 636, 640. *See also Bourgeois v. Brown's Deli & Mkt., Inc.*, 09-290 (La. App. 3 Cir. 10/14/09), 21 So.3d 1072; *Guilbeaux v. Office of Dist. Attorney*, 07-89 (La.App. 3 Cir. 5/30/07), 957 So.2d 959; and *Cain v. JCPenney Co., Inc.*, 03-1706 (La.App. 3 Cir. 5/12/04), 872 So.2d 1262.

The instant case clearly presents conflicting medical opinions. The WCJ was presented with divergent expert medical opinions on whether Mr. Richard's current medical condition was causally related to the TBI he sustained in the March 2003 accident, or whether it was the result of the progression of Alzheimer's Disease. In connection with these opinions, much discussion is devoted to the relevance of Mr. Richard's family history of Alzheimer's disease and its relevance, *vel non*, to his current disabling condition.

The medical evidence presented to the WCJ on the issue of causation included that of Dr. Ally, Dr. Lugo, Dr. F. Williams Black, and Dr. Harold Ginzberg (appointed by the WCJ to perform an independent medical examination). This court has thoroughly reviewed the medical records and depositions of record and expressly notes the following expert opinions on the issue of causation.

Fabian Lugo, M.D. -  Neurologist

10

Dr. Lugo's impression of Mr. Richard's condition is that of "post-concussion syndrome with subjective memory difficulties." In Dr. Lugo's opinion, Mr. Richard's symptoms are "genuine and most likely as a result of traumatic cortical and axonal brain damage[.]" We also note that Dr. Lugo's progress note of July 15, 2008, indicates "cognitive disorder; sequela of TBI[.]"

Glenn Ally, PhD. - Neuropsychologist, Medical Psychologist[1]

Dr. Ally acknowledges that Mr. Richard "presents with a rather complex study regarding cognitive deficits. While the noted deficits can be consistent with the [TBI], the fact that the deficits are reported by the patient and his son as apparently worsening[,] is typically not associated with such [TBI]." While Dr. Ally agrees that Mr. Richard sustained a TBI "that resulted in cognitive deficits[,]" he states that "the cognitive decline may be due to more than [TBI]." In his opinion, TBI "is a risk factor for the development of Alzheimer's disease and certainly any [TBI] sustained by a patient with Alzheimer's disease would complicate an already eroding cognitive dysfunction." Dr. Ally expressed the opinion that Mr. Richard is suffering from Alzheimer's disease which was "accelerated by [the TBI]."

F. Williams Black, PhD. - Neuropsychologist

Dr. Black's report states that "Mr. Richard's neuropsychological functioning

---

[1]We note that the Employer has raised as assignments of error on appeal the WCJ's introduction of "the records, articles and other documents provided by Dr. Glenn Ally, into evidence" as well as "the testimony of Dr. Glenn Ally regarding the articles he reviewed." These assertions are discussed later in this opinion.

11

was somewhat variable over the course of [his] evaluation, although the areas of inefficiency or mild dysfunction noted appeared to be longstanding and not associated with the patient's work[-]related accident." He comments further that "[current test findings are also not highly consistent with the diagnosis of primary progressive dementia (as has been suggested as a possibility in this case)." Rather, "[i]t appears more likely then [sic] not that factors other than the work accident are primarily responsible for those mildly deficient neuropsychological findings[.]" After performing his evaluation on Mr. Richard, Dr. Black considered it "improbable that there is a **current** causal relationship between Mr. Richard's present neurocognitive function and the work-related accident of March 2003."

Harold Ginzburg, M.D. - Psychiatrist, Neuropsychiatrist

Dr. Ginzberg was appointed by the WCJ to perform a psychiatric evaluation on Mr. Richard. Dr. Ginzberg concluded that Mr. Richard "is suffering from a dementia." Dr. Ginzberg explained in his deposition that "the clinical findings . . . are not consistent with a single closed-head trauma of the kind documented by Mr. Richard. Rather, the injury that Mr. Richard sustained cannot anatomically explain what I saw and potentially what other clinicians saw." Dr. Ginzberg states that "[t]he dementia appears to be progressive and, to a medical degree of certainty, independent of the trauma he sustained." Thus, in his opinion, the progressive deterioration of Mr. Richard has nothing to do with his March 2003 work-accident.

12

After considering the evidence in this case, the WCJ stated in his oral reasons that "all of the medical evidence as a whole from all the treating physicians, viewed as a whole, simply does not rise to the level necessary to rebut the causation presumption to which Mr. Richard is legally entitled." Mindful of the considerable discretion granted to the WCJ in evaluating conflicting expert testimony, considering the medical evidence of record in these proceedings and the applicability of the legal presumption of causation discussed above, we do not find the conclusion of the WCJ on the issue of causation to be manifestly erroneous. Accordingly, under the deferential standard of review, we find no error in the WCJ's determination that Mr. Richard carried his burden of showing a causal connection between his current disability and his work-related accident in March of 2003.

**DR. ALLY - Admissibility of Records, Articles, and Testimony**

The Employer assigns as error on appeal the introduction of "the records, articles and other documents provided by Dr. Glenn Ally, into evidence," and "the testimony of Dr. Glenn Ally regarding the articles he reviewed[.]" We note that at trial, counsel for the Employer stated that she had "no objection with regard to Dr. Ally's records." Rather, the objection raised by counsel was "to the articles that have been provided by Dr. Ally." Likewise, counsel stated that she did not "have an objection, in general, to [Dr. Ally's] testimony." The objection made was solely "to the extent that his testimony includes discussions regarding the articles."

13

In *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, pp. 9-10 (La.3/4/98), 708 So.2d 375, 381 (footnote omitted, emphasis in original), our supreme court discussed the relaxed rules of evidence applicable to workers' compensation proceedings as follows:

> [Louisiana Revised Statutes] 23:1317 mandates that the hearing officer's factual findings be based on "competent evidence." LA.REV.STAT. ANN. 23:1317(A) (West Supp.1997). This legislative mandate is necessary because under the express language of LSA-RS 23:1317, worker[s'] compensation hearing officers are "not bound by the technical rules of evidence." *Id.* In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. MCCORMICK ON EVIDENCE § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record. Although the Legislature has not defined "competent evidence," in order to give the relaxed evidentiary standard in LSA-RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.

*Journet v. Greene's Energy Group*, 09-347, pp. 5-6 (La. App. 3 Cir. 10/7/09), 20

So.3d 1195, 1199-200.

14

In ruling on the Employer's evidentiary objections, the WCJ noted the grounds therefor argued by counsel and stated that it would "factor that into the weight of the evidence." We also note, as Mr. Richard points out in his brief to this court, that Dr. Ginzberg, the court-appointed medical expert, was provided with the articles and was given "an opportunity to comment on them." Additionally, Mr. Richard correctly notes that the WCJ did not mention these articles in articulating his oral reasons for judgment. Considering the foregoing, we find no error in the WCJ allowing Plaintiff's Exhibit 9 and Plaintiff's Exhibit 11 into evidence.

**REASONABLE AND MEDICALLY NECESSARY TREATMENT**

Pursuant to La.R.S. 23:1203(A), an employer has a duty to furnish all reasonable and necessary medical care resulting from an employee's work-related injury. *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170. The Employer asserts on appeal that the WCJ erroneously concluded that Dr. Ally's recommendation for twenty-four-hour care of Mr. Richard, in his home, is reasonable and medically necessary as a result of his work-related accident. We find no merit to this contention.

> A finding by a WCJ that medical treatment is necessary is reviewed under the manifest error standard. *Figgins v. Wal-Mart*, 06-806 (La.App. 3 Cir. 11/15/06), 945 So.2d 153, *writ denied*, 06-2977 (La. 2/16/07), 949 So.2d 421. That standard requires that the appellate court, in order to reverse, must find that the record reflects that there is no reasonable basis for the WCJ's factual determinations. *Clay v. City*

15

*of Jeanerette*, 99-1421 (La.App. 3 Cir. 5/31/00), 768 So.2d 609, *writ denied*, 00-2006 (La. 10/27/00), 772 So.2d 124.

*Bourgeois*, 21 So.3d at 1075.

In the instant case, Dr. Ally expressed the opinion that "it is now time for this patient to have 24[-]hour attendant care. He is posing a safety risk when left alone." Dr. Ally explained that his recommendation is based upon Mr. Richard's memory loss, which has resulted in his getting lost at times and, additionally, has resulted in his placing himself in potentially dangerous situations. According to Dr. Ally, having Mr. Richard remain in the familiar setting of his own home is preferable to care that may be provided in a facility given the nature of his condition.

Dr. Ally's medical recommendation is not refuted by any other evidence presented at trial. Thus, it cannot be said that the WCJ erred in finding the recommended treatment to be reasonable and necessary. We, therefore, affirm the judgment of the WCJ granting Mr. Richard "the physician's recommendation for twenty-four[-] hour care in his home[.]"

**ANSWER TO APPEAL**

In his answer to appeal, Mr. Richard seeks attorney[] fees for having to answer the appeal filed by [the Employer]." A claimant is entitled to an award of attorney fees for work performed on appeal when the appeal necessitates additional work on the part of the attorney. *Wilczewski*, 2 So.3d 1214; *Trahan v. Turner Indus., Inc.*, 08-704 (La.App. 3 Cir. 12/10/08), 999 So.2d 268. In the instant matter, we find an

16

additional award of attorney fees in the amount of $3,000.00 to be warranted.

**<u>DECREE</u>**

The judgment of the Office of Workers' Compensation finding that Kermit Richard currently suffers from a disabling condition that resulted from his work-related accident for which twenty-four-hour care is reasonable and medically necessary is affirmed. Additionally, we render judgment herein in favor of Kermit Richard in the amount of $3,000.00 for attorney fees necessitated by the present appeal. All costs of these proceedings are assessed against Defendants, Vermilion Hospital and Louisiana Commerce and Trade Association Self-Insurers' Fund.

**AFFIRMED AND RENDERED.**

17